IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
United States of America,      :    CRIMINAL ACTION
                               :    NO. 05-280-02
      v.                       :
                               :
Eric Andrews.                  :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        August 19, 2020

## Table of Contents

I.   INTRODUCTION ............................................. 2

II.  BACKGROUND ............................................... 3

III. LEGAL STANDARD........................................... 6

IV.  DISCUSSION ............................................... 6

   A.  The Court's Authority to Reduce a Sentence.............. 7
      1.  Extraordinary and Compelling Reasons ................. 8
      2.  Reasons Other Than Illness, Old Age, and Family
      Circumstances ........................................... 12
         a.  Length of the Sentence............................ 15
         b.  Amendment to § 924(c)............................. 18

   B.  Extraordinary and Compelling Reasons in this Case....... 24

V.   CONCLUSION ............................................... 37

In 2018, Congress enacted the First Step Act ("FSA"). The
FSA provided for, among other things, the reduction of federal
sentences, if the federal prisoner could demonstrate
extraordinary and compelling reasons warranting such relief.
Circa March 2020, the United States (as well as most of the
world) recognized the presence of a novel coronavirus, which
could endanger the lives of millions of people. Particularly at

risk, because of the inherent conditions of incarceration, were persons kept in custodial environments.

The confluence of these twin events, the passage of the FSA and the appearance of the coronavirus, created a perfect storm, generating countless petitions for compassionate release giving birth to district court decisions in the hundreds, granting and denying relief.

Without guidance from Congress and the Sentencing Commission (which lacks a quorum to act) concerning the meaning of the terms extraordinary and compelling, and in the fog of war created by incomplete and at times conflicting health information, courts have struggled to find their way to a principled disposition of compassionate release petitions.

With this experience in mind, the Court will proceed to consider the instant motion for compassionate release by first defining the scope of its own authority to reduce a lawfully imposed sentence and, upon locating such authority, determining whether the facts and circumstances alleged here rise to the level of extraordinary and compelling.

## I.   INTRODUCTION

Eric Andrews is serving a 312-year sentence for thirteen armed robberies he committed when he was nineteen years old. The FSA amended the compassionate release provision in the United States Code to allow defendants to move the Court for a

reduction of a sentence for extraordinary and compelling reasons. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Under this authority, Andrews moves the Court for a reduction of his sentence.

## II.   BACKGROUND

In 2005, Andrews, at nineteen years of age, was charged with committing thirteen robberies, conspiring to commit robberies, and brandishing a firearm during the completed crimes. Andrews was indicted along with three others, and of the three, two pleaded guilty, and one, along with Andrews, proceeded to trial, where the two were found guilty.

Andrews was sentenced to 312 years' imprisonment: the conspiracy and substantive robbery counts account for fifty-seven months of his sentence, while the other 3,684 months of his sentence were imposed on account of thirteen counts of brandishing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). These firearm counts each carry a mandatory minimum sentence of seven years. But at the time Andrews was sentenced, successive § 924(c) counts in the first prosecution each carried a mandatory minimum of twenty-five years. Thus, with twelve § 924(c) counts carrying mandatory twenty-five-year sentences, which must run consecutively, this disproportionate sentence was mandated.

The FSA amended § 924(c) to provide that the twenty-five-year mandatory minimum only applies to a "violation of this subsection that occurs after a prior conviction under this subsection has become final." § 403(a), 132 Stat. 5194, 5221-22 (codified at 18 U.S.C. § 924(c)(1)(C)). While the amendment was titled a "clarification," the provision was explicitly not retroactive, unlike other portions of the FSA. § 403(b), 132 Stat. 5194, 5222. Even if the amendment applied retroactively or Andrews were sentenced today under the amended provision, he would be sentenced to a mandatory minimum of ninety-one years for the thirteen § 924(c) counts.

Andrews argues that he does not seek retroactive application of the § 924(c) amendment, but that he instead moves the Court for compassionate release under 18 U.S.C. § 3582(c)(1). He asks for a reduction of his sentence to time served, after having served fourteen years. In arguing that extraordinary and compelling reasons exist, Andrews's motion focused on the length of the sentence and the FSA's reduction of § 924(c) successive mandatory minimums on a first conviction. And while not expressly arguing that they are extraordinary and compelling reasons, it also pointed to his rehabilitation in prison and his young age at the time of the offenses as factors under § 3553(a). In his reply to the government's response, he more directly argued that all four of these reasons are

4

extraordinary and compelling when considered together, as part of a holistic review, and he added that the decision to charge thirteen § 924(c) counts as a trial penalty is also an extraordinary and compelling reason. In the briefing—both by Andrews and by the government—the question of whether there are extraordinary and compelling circumstances here was largely eclipsed by the issue of the Court's power to grant compassionate release.

At the oral argument—where the Court pressed the parties about whether there are extraordinary and compelling reasons here—Andrews again asserted the holistic approach. While pointing to all five reasons listed above, Andrews especially focused on the length of the sentence and the government's decision to charge thirteen consecutive § 924(c) counts. He argued, "if this [United States Attorney's] Office used the prosecutorial judgment it used back then against a 19-year-old and made him eat 13 consecutive mandatory seven-year sentences, this Court would have the authority [to grant compassionate release one day after the sentence was imposed]." Oral Arg. Tr. 45:2–45:5, ECF No. 245.

By way of a letter, after the briefing and argument, Andrews also raised his susceptibility to the COVID-19 pandemic, due to hypertension requiring medication, as an additional extraordinary and compelling reason for granting his motion.

## III. **LEGAL STANDARD**

In interpreting a statute, the Court begins "with the statutory text," and "[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." BP Am. Prod. Co. v. Burton, 549 U.S. 84, 91 (2006) (citations omitted). The Court considers "the specific context in which that language is used, and the broader context of the statute as a whole," assumes "that every word in a statute has meaning," and avoids "interpreting one part of a statute in a manner that renders another part superfluous." Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth., 539 F.3d 199, 210 (3d Cir. 2008) (internal quotations and citations omitted). The Court "also consider[s] the overall object and policy of the statute, and avoid[s] constructions that produce odd or absurd results or that are inconsistent with common sense." Id. (internal quotations and quotation marks omitted).

## IV. **DISCUSSION**

To decide Andrews's compassionate release motion, the Court must first determine its authority to reduce a lawfully imposed sentence and, once it locates the scope of the authority, it must evaluate whether Andrews's case presents extraordinary and compelling reasons for granting the motion.

A.    <u>**The Court's Authority to Reduce a Sentence**</u>

The concept of compassionate release is not a novel one. It was created with the Comprehensive Crime Control Act of 1984, Pub. L. 98-473, § 3582(c)(1)(A), 98 Stat. 1837, 1998-99, which also abolished parole and created the current determinate sentencing regime. Under the compassionate release provision as originally written in 1984, a motion for compassionate release could only be brought by the Bureau of Prisons ("BOP"). § 3582(c)(1)(A), 98 Stat. 1837, 1998-99. In December of 2018 Congress enacted the FSA. And the FSA—for the purpose of increasing the use and transparency of compassionate release, as the relevant section is titled—amended the compassionate release provision to allow a motion brought directly by the defendant. § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Thus, while the BOP was the gatekeeper to compassionate release under the Comprehensive Crime Control Act of 1984, the FSA divested the BOP of this sole gatekeeper role.

Under the compassionate release provision, as amended, the Court may, on the defendant's motion, "reduce the term of imprisonment" of the defendant "after considering the factors set forth in section 3553(a)" if (1) the administrative exhaustion requirement is met, (2) "extraordinary and compelling reasons warrant such a reduction," and (3) "such a reduction is consistent with applicable policy statements issued by the

Sentencing Commission." 18 U.S.C. § 3582(c)(1). Because there is no dispute that the exhaustion requirement is met here, the Court first turns to what the Court may properly consider as extraordinary and compelling reasons.

### 1.   Extraordinary and Compelling Reasons

Congress did not define extraordinary and compelling reasons, except by providing that rehabilitation alone is not enough. 28 U.S.C. § 994(t). Instead, Congress directed the Sentencing Commission ("Commission") to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under compassionate release. Id.

Following Congress's direction, the Commission described extraordinary and compelling reasons, in a policy statement, as (1) illness, (2) old age, (3) family circumstances, and (4) other reasons determined by the BOP. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sentencing Comm'n 2018).[1] It is undisputed that there is no illness, old age, or family circumstance that provides the basis for granting compassionate release here. The only question, at the outset, is whether the Court, in considering a defendant's motion for compassionate release, may only consider these reasons and other

---

[1] In turn, the BOP does not define "other" reasons, but provides that compassionate release can be granted based on illness, old age, or family circumstances. Federal Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

reasons determined by the BOP, or whether it may go beyond those reasons.

Many district courts have now weighed in on this question, and they overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons. Although a minority of district courts have held that reasons other than illness, old age, and family circumstances are limited to those determined by the BOP,[2] "a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3852(c)(1)(A).'" United States v. Rodriguez, --- F. Supp. 3d ----, No. 03-cr-00271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (alterations in original) (quoting United States v. Beck, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019)).

The majority of courts reason that because the Commission's policy statement is by its own terms limited to compassionate

---

[2] See United States v. Lynn, No. 89-cr-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019) ("The Commission may well decide that, since BOP is no longer the gatekeeper regarding the filing of motions for compassionate release, neither should it be the gatekeeper regarding the residual category of extraordinary and compelling reasons for compassionate release. Should the Commission so amend its policy statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version. Until that day, however, the Court must follow the policy statement as it stands."), appeal dismissed, No. 19-13239-F, 2019 WL 6273393 (11th Cir. Oct. 8, 2019).

release motions brought by the BOP, the policy statement is inapplicable to motions brought directly by defendants. Id. Therefore, given that the policy statement is applicable only to motions brought by the BOP and not those brought by defendants, the Court can make its own independent determination as to extraordinary and compelling reasons when the defendant moves for compassionate release. Id.[3] This is the more persuasive line of cases.

The minority's position is not persuasive because it would put motions brought directly by the defendant at a disadvantage to those brought by the BOP. In other words, under the minority view, when the BOP brings the motion, compassionate release may be granted based on reasons other than illness, old age, and family circumstances, but when the defendant brings the motion, compassionate release may not be granted based on such "other" reasons. And, as one court put it, it would be an odd result if the defendant could only bring the motion "by accepting a pared-down standard of review that omitted the flexible ["other" reasons] catchall standard." Id.  *5.[4]

---

[3] See also United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) ("In the absence of an applicable policy statement . . . the district court can consider anything—or at least anything the BOP could have considered—when assessing a defendant's motion."), order amended on reconsideration, --- F. Supp. 3d ----, No. 05-cr-00227-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020)).

[4] The position taken by a minority of courts is also inconsistent with case law that provides that courts give no deference to administrative agencies in this situation. See Rodriguez, --- F. Supp. 3d at ----, 2020 WL 1627331, at *6 n.12 ("[C]ourts 'do not generally accord deference to one agency's

The government's argument that the policy statement is
binding misses the mark because the policy statement does not
apply to motions by defendants. The government argues that most
courts have ruled incorrectly because the Commission's policy
statement is binding, citing Dillon v. United States, 560 U.S.
817, 819 (2010). But this argument is unavailing because, even
if binding when the BOP brings the motion, the policy statement
is inapplicable to situations where the defendant, not the BOP,
brings the motion for compassionate release.[5]

That said, if the sentencing commission updates the policy
statement to make it applicable to motions by defendants, the
Court must ensure that the sentence reduction upon a defendant's
motion is consistent with that policy statement.[6] In the

---

interpretation of a regulation issued and administered by another agency.'"
(quoting Chao v. Community Tr. Co., 474 F.3d 75, 85 (3d Cir. 2007)).
[5] See Rodriguez, --- F. Supp. 3d at ----, 2020 WL 1627331, at *4
("Accordingly, by its own terms, the scope of the old policy statement is
clearly outdated and, at the very least, does not apply to the entire field
of post-First Step Act motions. In other words, for prisoner-filed motions,
there is a gap left open that no 'applicable' policy statement has
addressed."); United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)
("By its terms, the old policy statement applies to motions for compassionate
release filed by the BoP Director and makes no mention of motions filed by
defendants."). Further, the policy statement cannot be binding to the extent
it contradicts the FSA because guidelines can only be binding if they do not
contradict statutes. See United States v. Adeyemi, No. 06-cr-124, 2020 WL
3642478, at *14 (E.D. Pa. July 6, 2020) (holding that the policy statement is
not binding because "[t]he plain language of section 3582(c)(1)(A)(i), not
just Congress's intent to improve and increase compassionate release,
contradicts the introductory phrase of Note 1(D) to the Commission's policy
statement" (citing United States v. LaBonte, 520 U.S. 751 (1997) & Stinson v.
United States, 508 U.S. 36 (1993))).
[6] See United States v. Lynn, No. 89-cr-0072, 2019 WL 3805349, at *4 (S.D. Ala.
Aug. 13, 2019) ("Should the Commission so amend its policy statement, the
courts will of course be bound by Section 3582(c)(1)(A) to follow the amended
version."), appeal dismissed, No. 19-13239-F, 2019 WL 6273393 (11th Cir. Oct.
8, 2019).

meantime,[7] the Commission's policy statement, while inapplicable to motions by defendants, nonetheless provides helpful guidance to the Court in determining what constitutes extraordinary and compelling reasons.[8] <u>United States v. Ebbers</u>, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020).

## 2.   <u>Reasons Other Than Illness, Old Age, and Family Circumstances</u>

The Court will consider Andrews's suggested reasons for finding that extraordinary and compelling reasons are present, except when the proposed reasons violate the doctrine of separation of powers. Andrews presents the following as extraordinary and compelling reasons: (1) young age at the time of the offense, (2) rehabilitation in prison, (3) susceptibility to COVID-19, (4) the prosecutorial charging decision, (5) the length of the sentence, and (6) the amendment to § 924(c).

Not all of Andrews's suggested reasons are appropriate to consider. The offender's young age and rehabilitation may be extraordinary reasons in that they may be "[b]eyond what is usual, customary, regular, or common." <u>Extraordinary</u>, Black's Law Dictionary (10th ed. 2014). Similarly, young age and rehabilitation may be compelling in that they may demonstrate

---

[7] <u>See</u> <u>Rodriguez</u>, --- F. Supp. 3d. at ----, 2020 WL 1627331, at *6 ("Nothing in § 3852(c)(1)(A)(i) requires courts to sit on their hands in situations like these. Rather, the statute's text directly instructs <u>courts</u> to 'find that' extraordinary circumstances exist.").
[8] <u>See</u> <u>infra</u> Section IV.B.

"[a] need so great that irreparable harm or injustice would result if it is not met." Compelling Need, Black's Law Dictionary (10th ed. 2014). And the government does not dispute that susceptibility to COVID-19, under certain circumstances, can be an extraordinary and compelling reason. But the other three reasons—the prosecutor's charging decision, the length of the sentence, and the amendment to § 924(c)—implicate separation of powers concerns.

A sentence is the result of decisions by all three branches of the government. The legislature defines the crime and establishes the penalty. The executive determines whether to prosecute the crime. And the judiciary imposes a specific sentence following a conviction, but within the scope of the penalty established by the legislature. Thus, a motion for compassionate release calls into question the judgments of all three branches. The Supreme Court has recognized that sentencing "has never been thought of as the exclusive constitutional province of any one Branch." Mistretta v. United States, 488 U.S. 361, 390 (1989). So, determining the power of the Court to reduce a sentence implicates separation of powers jurisprudence, which is animated by a concern about "the encroachment or aggrandizement of one branch at the expense of the other." Id. at 382 (quoting Buckley v. Valeo, 424 U.S. 1, 122 (1976)).

13

The separation of powers doctrine requires "that the Judicial Branch neither be assigned nor allowed 'tasks that are more properly accomplished by [other] branches.'" Id. at 383 (alteration in original) (quoting Morrison v. Olson, 487 U.S. 654, 680–81 (1988)). Thus, any consideration of extraordinary and compelling reasons must respect Congress's "exclusive power to define offenses and to establish penalties" and recognize that "the decision whether or not to prosecute and what charges to file generally rests within the prosecutor's broad discretion." United States v. MacEwan, 445 F.3d 237, 251 (3d Cir. 2006) (internal quotations and quotation marks omitted).

As to the three reasons that raise separation of powers concerns here—i.e., the prosecutor's charging decision, the length of the sentence, and the amendment to § 924(c)—the Court will assume, without deciding, that prosecutorial decisions may appropriately be considered as extraordinary and compelling reasons, despite the serious separation of powers concerns.[9] But

---

[9] In our criminal justice system, "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." United States v. Batchelder, 442 U.S. 114, 124 (1979). And judicial authority to review prosecutorial decisions remains a "limited authority to affect prosecutorial actions when those actions are taken in violation of the Constitution." United States v. Santtini, 963 F.2d 585, 596 (3d Cir. 1992). That said, Congress may place some "statutory [] limits enforceable through judicial review" on "the exercise of prosecutorial discretion." Nader v. Saxbe, 497 F.2d 676, 679 n.19 (D.C. Cir. 1974); see also The Confiscation Cases, 74 U.S. 454, 457 (1868). But courts "may not lightly impute to Congress an intent to remove prosecutorial discretion from the Executive and place it in courts and private parties." Nathan v. Smith, 737 F.2d 1069, 1079 (D.C. Cir. 1984) (Bork, J., concurring); see also United States v. HSBC Bank USA, N.A., 863 F.3d 125, 138 (2d Cir. 2017); United States v. Fokker Servs. B.V., 818 F.3d 733, 742 (D.C. Cir. 2016). In this

the other two suggested reasons—the length of the sentence and the amendment to § 924(c)—implicate separation of powers concerns that cannot be avoided and to which the Court now turns.

a.   <u>Length of the Sentence</u>

The length of the sentence cannot be an extraordinary and compelling reason to grant compassionate release because this would infringe on the legislature's province to fix penalties. This is especially true when mandatory minimums are involved. In essence, Andrews asks the Court to reevaluate his sentence and fashion its own brand of justice. But to do so in this manner would intrude on legislative prerogatives.

In our criminal justice system, "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" <u>Harmelin v. Michigan</u>, 501 U.S. 957, 998 (1991) (Kennedy, J., concurring) (quoting <u>Rummel v. Estelle</u>, 445 U.S. 263, 275–76 (1980)). It is well settled that "the scope of judicial discretion with respect to a sentence is subject to

---

case, the Court need not determine whether the FSA authorizes judicial review of charging decisions because, as discussed further below, Andrews does not even begin to come close to a showing of prosecutorial misconduct or abuse of discretion. <u>See</u> <u>infra</u> Section IV.B. Therefore, the Court will assume without deciding that the FSA authorizes a consideration of prosecutorial decisions as extraordinary and compelling reasons.

congressional control." <u>Mistretta</u>, 488 U.S. at 364 (citing <u>Ex parte United States</u>, 242 U.S. 27 (1916)). "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." <u>Chapman v. United States</u>, 500 U.S. 453, 467 (1991) (citation omitted). Ultimately, in legislating mandatory sentences for certain crimes, Congress divested the courts of all sentencing discretion below those mandatory minimums. <u>MacEwan</u>, 445 F.3d at 251.

Reducing a sentence based on the length of the sentence would be a usurpation of Congress's power to set criminal penalties. Compassionate release does not give federal courts free rein to reassess lawfully imposed sentences; it "is not an opportunity to second guess or to reconsider whether the original sentence was just." <u>United States v. Ebbers</u>, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020). Compassionate release is not a form of judicial (as opposed to executive) clemency.

And especially where the length of the sentence was determined by the imposition of a mandatory minimum, the encroachment into the legislature's province is exacerbated. Reducing a mandatory minimum sentence based on its length is a bold assertion of full discretion—constrained only by the Court's own assessment of whether the length is extraordinary

16

and compelling—where Congress expressly divested the courts of all such discretion.[10]

Further, to consider the length of the sentence as an extraordinary and compelling reason for reducing a sentence also offends the rule of finality enacted by Congress. 18 U.S.C. § 3582(b). It is true that compassionate release provides "an 'exception to the general rule of finality' over sentencing judgments." United States v. Rodriguez, 855 F.3d 526, 529 (3d Cir. 2017) (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)). But this limited power does not license courts to revisit all sentences. In other words, if the Court were permitted under the guise of compassionate release to reduce a sentence based on the Court's idiosyncratic belief that the previously imposed sentence is too long, compassionate release would be the exception that swallows the general rule of finality. Under this view, a federal court could resentence a defendant immediately after the defendant has been sentenced. And a court could reduce a duly imposed sentence to time served

---

[10] The Court only holds that the length of a sentence, including a sentence imposed pursuant to a mandatory minimum, cannot itself be an extraordinary and compelling reason for granting compassionate release. The reduction of a sentence below the mandatory minimum is a separate and distinct issue. Whether a sentence that was imposed pursuant to a mandatory minimum may be reduced where there are valid extraordinary and compelling reasons, e.g., illness, remains an open question. See United States v. Varnado, No. 14-cr-283, 2020 WL 2512204, at *1 n.1. (S.D. Cal. May 15, 2020) ("Whether district courts have authority to grant a reduction in sentence under § 3582(c)(1)(A) where the defendant's original sentence was based on a mandatory minimum is an open question."), appeal docketed, No. 20-50160 (9th Cir. June 10, 2020).

immediately after the sentence is pronounced. Under these circumstances, the federal judiciary would return to the much-criticized indeterminate sentencing regime, and a duly imposed, legal sentence would be simply aspirational, without the requisite finality.

Therefore, the Court cannot consider the length of a lawfully imposed sentence, even if it is a disproportionate sentence, as an extraordinary and compelling reason warranting compassionate release.

b.   Amendment to § 924(c)

The FSA's amendment to § 924(c) cannot be an extraordinary and compelling reason because this would intrude on Congress's authority to determine the temporal scope of its statutes. The amendment is expressly not retroactive, and the retroactivity of a statute is determined by Congress and not by a court, unless Congress has not expressly determined its retroactivity. Granting a motion for compassionate release on the basis of the amendment to § 924(c) would supplant the retroactivity determination of courts—that the amendment should be applied retroactively on a case-by-case basis—for the retroactivity determination of Congress—that the amendment should not be applied retroactively. When Congress speaks on the retroactivity of the statute, its judgment is final.

Retroactivity doctrine "allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes." Landgraf v. USI Film Prod., 511 U.S. 244, 273 (1994). And a court only determines the retroactivity of a statute when "the statute contains no [] express command" regarding retroactivity. Id. at 280. This is because "the legislative power is the power to make law, and Congress can make laws that apply retroactively." Patchak v. Zinke, 138 S. Ct. 897, 905 (2018). The constitutional restrictions on Congress's authority to decide the retroactivity of statutes are limited to the Ex Post Facto Clause, the Contracts Clause, the Takings Clause, the Bills of Attainder Clause, and the Due Process Clause. Bank Markazi v. Peterson, 136 S. Ct. 1310, 1325 (2016) (citing Landgraf 511 U.S. at 266–67). But "[a]bsent a violation of one of those specific provisions," the Court must give a statute "its intended [temporal] scope." Id. (quoting Landgraf, 511 U.S. at 267-68).

A number of courts that have considered whether the amendment to § 924(c) can be an extraordinary and compelling reason have held that it can.[11] These courts reason that "a

---

[11] See United States v. Quinn, --- F. Supp. 3d ----, No. 91-cr-00608, 2020 WL 3275736, at *4 (N.D. Cal. June 17, 2020) ("Consistent with numerous other courts to have confronted similar situations since the FSA, this decision turns on the enormous sentencing disparity created by subsequent changes to federal sentencing law which constitutes an 'extraordinary and compelling reason' for Quinn's compassionate release."); United States v. Brown, --- F. Supp. 3d ----, No. 05-cr-00227-1, 2020 WL 2091802, at *8 (S.D. Iowa Apr. 29, 2020) (collecting cases).

legislative rejection of the need to impose sentences under
§ 924(c), as originally enacted, as well as a legislative
declaration of what level of punishment is adequate" is an
extraordinary and compelling reason. United States v. Redd, ---
F. Supp. 3d ----, No. 97-cr-00006, 2020 WL 1248493, at *6 (E.D.
Va. Mar. 16, 2020) (footnote omitted). Some of these courts hold
that the amendment may only be a basis for granting
compassionate release "in combination with other circumstances."
United States v. Defendant(s), No. 99-cr-00257, 2020 WL 1864906,
at *6 (C.D. Cal. Apr. 13, 2020) (quoting United States v.
O'Bryan, No. 96-cr-10076-03, 2020 WL 869475, at *2 (D. Kan. Feb.
21, 2020)). They reason that the amendment's express non-
retroactivity forecloses granting a motion for compassionate
release when the amendment is the only reason for doing so but
does not prevent a court from granting compassionate release
based on the amendment together with another reason. United
States v. Brown, --- F. Supp. 3d ----, No. 05-cr-00227-1, 2020
WL 2091802, at *9 (S.D. Iowa Apr. 29, 2020).[12]

---

[12] See also United States v. Pitts, No. 94-cr-70068-2, 2020 WL 1676365, at *7
(W.D. Va. Apr. 6, 2020) ("To be clear, the limitation of § 403(b) does not
necessarily preclude the court from reducing Pitts' drug sentences. But
§ 403(b) indicates that Congress did not intend the sentencing disparity
between defendants sentenced before and after the § 924(c) amendment to
constitute a sufficient basis on its own to grant the reduction Pitts
seeks."), appeal docketed, No. 20-6551 (4th Cir. Apr. 22, 2020); United
States v. Chan, No. 96-cr-00094-13, 2020 WL 1527895, at *6 (N.D. Cal. Mar.
31, 2020) ("It is not unreasonable for Congress to conclude that not all
defendants convicted under § 924(c) should receive new sentences, even while
expanding the power of the courts to relieve some defendants of those

This reasoning is not persuasive. This interpretation "effectively [provides the statute] retroactive effect on a case-by-case basis." United States v. Jackson, No. 08-cr-20150-02, 2020 WL 2812764, at *5 (D. Kan. May 29, 2020), reconsidered on other grounds, No. 08-cr-20150-02, 2020 WL 4284312, at *1 (D. Kan. July 27, 2020). The amendment provides as follows: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5194, 5222. The text of the amendment plainly states that individuals will receive the benefit of the amendment if they have not been sentenced. Considering the amendment as an extraordinary and compelling reason is giving the benefit of the amendment to individuals who were already sentenced, thus turning the amendment on its head. If Congress wanted the amendment to be retroactive on a case-by-case basis, it would have said so in the text of the statute.

The legislative history of the FSA informs that the amendment was the product of a legislative compromise,[13] which

---

sentences on a case-by-case basis." (quoting United States v. Maumau, No. 08-cr-00758-11, 2020 WL 806121 (Feb. 18, 2020))).

[13] See 164 Cong. Rec. S7,749 (daily ed. Dec. 18, 2018) (statement of Sen. Leahy) ("I would like to see a broader judicial safety valve and additional retroactive activity. . . . But this is the nature of compromise. You don't get everything you want. And when I look at the scope of reforms before us today—including a modest expansion of the safety valve, retroactive application of the Fair Sentencing Act, a reduction to some of the most

the Court must respect. In other words, the Court must "giv[e] full effect to all of Congress' statutory objectives, as well as the specific balance struck among them." Lewis v. Alexander, 685 F.3d 325, 343 (3d Cir. 2012) (citing Rodriguez v. United States, 480 U.S. 522, 525–26 (1987)). To contradict the plain text of the statute based on the title of the amendment[14] or the greater purpose of the FSA "frustrates rather than effectuates legislative intent." Rodriguez, 480 U.S. at 526. Invocations of lofty ideals of criminal justice reform enshrined throughout the FSA do not override the plain text of the amendment.

Moreover, the argument that compassionate release can be used as a vehicle to provide case-by-case retroactivity without running afoul of the retroactivity provision ignores principles of statutory construction. The Court looks to "the canon generalia specialibus non derogant, that the specific governs

---

indefensible mandatory minimums on the books, as well as reforms to add evidence-based practices to our prison system and reentry efforts—I believe this is a historic achievement."); 164 Cong. Rec. S7,649–50 (daily ed. Dec. 17, 2018) (statement of Sen. Grassley) ("Some have called for eliminating mandatory minimums or cutting them back severely. I happen to be a supporter of mandatory minimum sentences because it helps law enforcement take down criminal enterprises, but at the same time, I recognize there is some unfairness in how these mandatory minimum sentences are sometimes applied. . . . The President deserves credit for brokering a deal that improves fairness and supports law enforcement. A tremendous amount of credit is also due to my colleagues in the Senate who helped to forge a bipartisan compromise on complex issues.").

[14] See United States v. Quinn, --- F. Supp. 3d ----, No. 91-cr-00608, 2020 WL 3275736, at *4 (N.D. Cal. June 17, 2020) ("'The portion of the First Step Act amending § 924(c) is titled "Clarification of Section 924(c), ... suggesting that Congress never intended the statute to result in a "stacked" sentence' like Quinn's." (alteration in original) (quoting United States v. Decator, --- F. Supp. 3d ----, No. 95-cr-0202, 2020 WL 1676219, at *4 (D. Md. Apr. 6, 2020))).

the general in interpreting a statutory scheme." <u>Cazun v. Attorney Gen. United States</u>, 856 F.3d 249, 256 (3d Cir. 2017). Before applying this canon, it must be determined that the two provisions at issue "both address the same subject matter" and "cannot be reconciled." <u>Creque v. Luis</u>, 803 F.2d 92, 94–95 (3d Cir. 1986).

The <u>generalia</u> canon forecloses the use of the compassionate release provision to circumvent the retroactivity provision. The two provisions address the same subject matter in that, when compassionate release takes the amendment into account, they both address whether sentenced defendants will get the benefit of the amendment. And holding that the provisions are reconciled by not giving the benefit of the amendment to all sentenced defendants but only to some sentenced defendants on a case-by-case basis is a rewriting of the amendment, not a reconciliation at all. To be retroactive is to "extend[] in scope or effect to matters that have occurred in the past." <u>Retroactive</u>, Black's Law Dictionary (10th ed. 2014). The retroactivity provision provides specifically that the amendment will extend to matters where the defendant has not been sentenced. To construe the amendment to apply to matters where the defendant has already been sentenced makes the general provision trump the specific provision.

Therefore, the Court cannot consider the amendment to § 924(c) as an extraordinary and compelling reason for granting compassionate release.

**B.    Extraordinary and Compelling Reasons in this Case**

Having determined the authority and circumstances under which a sentence may be reduced, the Court now turns to whether Andrews presents reasons warranting compassionate release.

Neither Congress nor the Commission have elaborated on the meaning of extraordinary and compelling reasons <u>other</u> than old age, health, and family circumstances. In the absence of guidance, the Court gives these terms their ordinary meanings. <u>See</u> <u>United States v. Castano-Vasquez</u>, 266 F.3d 228, 233 (3d Cir. 2001) (citing <u>Chapman v. United States</u>, 500 U.S. 453, 461–62 (1991)).

The ordinary meaning of extraordinary is "[b]eyond what is usual, customary, regular, or common." <u>Extraordinary</u>, Black's Law Dictionary (10th ed. 2014).[15] And the ordinary meaning of compelling need is "[a] need so great that irreparable harm or injustice would result if it is not met." <u>Compelling Need</u>, Black's Law Dictionary (10th ed. 2014).

---

[15] <u>Accord</u> <u>United States v. Castano-Vasquez</u>, 266 F.3d 228, 233 (3d Cir. 2001) ("The ordinary meaning of 'extraordinary' is 'more than ordinary . . . going beyond what is usual, regular, common, or customary . . . exceptional to a very marked extent.'" (alterations in original) (citing Webster's New Int'l Dictionary 807 (3d ed. 1993))).

In enacting the FSA, Congress chose the terms to be expressed in the conjunctive. See Reese Bros. v. United States, 447 F.3d 229, 235 (3d Cir. 2006) ("The usual meaning of the word 'and,' however, is conjunctive."). Each of the terms, "extraordinary" and "compelling," has a distinct meaning. When Congress chooses to speak in the conjunctive, it intends that each element of the conjunction be satisfied separately and individually. See id. at 235–37. In other words, for compassionate release to be available, in the first instance, the Court must find that there are sufficient grounds that the circumstances identified by the defendant are both extraordinary and compelling.

Most commonly, though, Courts conflate the two terms, applying a sort of "totality of the circumstances" or seat-of-the-pants "I know it when I see it" approach.[16] This manner of

---

[16] See, e.g., United States v. Clausen, No. 00-cr-291-2, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020) ("Clausen's circumstances—particularly the combination of his excessive sentence and his demonstrated rehabilitation—present extraordinary and compelling reasons that justify a sentence reduction."); United States v. Adeyemi, No. 06-cr-124, 2020 WL 3642478, at *28 (E.D. Pa. July 6, 2020) ("We ultimately conclude Mr. Adeyemi has shown extraordinary and compelling reasons—not due to Mr. Adeyemi's health conditions alone, nor due to a change in sentencing law, but under the combination of the factors approved and applied by the Bureau of Prisons."); McCoy v. United States, No. 03-cr-197, 2020 WL 2738225, at *6 (E.D. Va. May 26, 2020) ("While none of the foregoing factors can independently support a sentence reduction, in combination, Petitioner has established extraordinary and compelling reasons for a sentence reduction in the aggregate. Specifically, Petitioner's relative youth at the time of the sentence, the overall length of the sentence, the disparity between his sentence and those sentenced for similar crimes after the FIRST STEP Act, and his rehabilitative efforts form an extraordinary and compelling basis for relief."), appeal docketed, (4th Cir. June 5, 2020).

exercising the "broad discretion of the district court risks introducing significant disparities in sentences under the rubric of compassionate release," depending upon the prism through which individual courts view the case. United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020).

In the presence of this vague standard, the Court's judgment can be informed by the Commission's policy statement, the BOP's program statement, and the case law interpreting them. Of course, neither the Commission's policy statement, the BOP's program statement, nor, in the absence of Supreme Court or Third Circuit guidance, the case law interpreting them is binding on the Court.[17] Nor is their application mandatory. However, they are helpful in that they represent the sort of experience and collective wisdom to guide us in this uncharted area.

The Commission's policy statement provides that extraordinary and compelling reasons exist when the defendant is suffering from an irremediable medical condition, has reached an

---

[17] As discussed above, the Commission's policy statement and the BOP's program statement are not applicable to compassionate release motions brought by defendants, and thus they are not binding on the Court here. See supra Section IV.A.1. And the only court of appeals to consider the question of other extraordinary and compelling reasons so far is the Tenth Circuit, in a nonprecedential opinion. See United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (nonprecedential) ("BOP Program Statement 5050.50 identifies several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist: the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" (quoting Federal Bureau of Prisons, Program Statement 5050.50 at 12 (Jan. 17, 2019))).

old age after serving a substantial portion of a sentence and is deteriorating in health, or becomes the only available caregiver for a minor or spouse.[18] The policy statement also provides that "other" reasons may be extraordinary and compelling, without further defining these "other" reasons. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D) (U.S. Sentencing Comm'n 2018). While the enumerated reasons (i.e. illness, old age, and family circumstances) look to circumstances at the time the motion is made, the policy statement provides that "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. at § 1B1.13 cmt. n.2.

Reviewed in toto, the common theme throughout the policy statement is that there are extraordinary and compelling reasons in situations where there are uncommon circumstances and continued imprisonment would result in a significant collateral

---

[18] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)-(C) (U.S. Sentencing Comm'n 2018) (providing that extraordinary and compelling circumstances exist when (1) "defendant is suffering from a terminal illness" or from a condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (2) "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;" or (3) there is a "death or incapacitation of the caregiver of the defendant's minor child or minor children" or "incapacitation of defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner").

27

or secondary harm to the defendant. This understanding is
consistent with the ordinary meaning of the words
"extraordinary" and "compelling." And a number of courts have
found extraordinary and compelling reasons in situations
consistent with this understanding. One such situation is where
there is an uncommon illness or medical complication
(extraordinary) and continued imprisonment increases the
likelihood of an untimely death or a serious injury
(compelling).[19] Another situation is where the defendants or
their dependents are unusually vulnerable (extraordinary) and
continued imprisonment inflicts harm on certain ailing
defendants or on defendants' closely-related dependents with no
other caregiver (compelling).[20] Thus, "other" situations
warranting a finding of extraordinary and compelling reasons may
also be found when there are unusual conditions (extraordinary)

---

[19] See United States v. Rodriguez, --- F. Supp.3d ----, No. 03-cr-00271-1,
2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (finding that it is
extraordinary and compelling that the defendant "suffers from underlying
health conditions that render him especially vulnerable to COVID-19," that
"prison is a particularly dangerous place for [the defendant] at this
moment," and that "he has served almost all of his sentence and has shown
commendable rehabilitation while in prison"); United States v. Beck, 425 F.
Supp. 3d 573, 581 (M.D.N.C. 2019) (finding that it is extraordinary and
compelling that "[a]s long as [the defendant] stays in BoP custody, she faces
a substantial likelihood of substandard medical care for her life-threatening
disease").
[20] See Ebbers, 432 F. Supp. 3d at 432 (finding that it is extraordinary and
compelling that the defendant is over 65 years old, has served more than ten
years, and "is sick, weak, disoriented, and bedridden"); United States v.
Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (finding that it is extraordinary
and compelling that "[the defendant] is the only available caregiver for an
ailing, close member of his family: his mother" (internal quotation and
quotation marks omitted)).

28

and continued imprisonment results in a significant collateral
or secondary harm to the defendant (compelling).

The Commission's policy statement further informs the Court
by reference to the BOP, which provides a list of factors to
guide the Court's judgment. The BOP's program statement provides
that, in determining whether to grant compassionate release, the
following should be considered: (1) the nature of the offense;
(2) the inmate's criminal history, personal history, current
age, age at the time of the offense, discipline in prison,
adjustment to prison, and release plans; (3) any detainers that
have not been resolved; (4) the amount of the sentence served;
(5) any victim's comments; and (6) "[w]hether release would
minimize the severity of the offense." Federal Bureau of
Prisons, Program Statement 5050.50 at 12 (Jan. 17, 2019). In
many ways, these considerations overlap with the § 3553(a)
factors, which a court must ultimately consider before granting
compassionate release. See United States v. Beck, 425 F. Supp.
3d 573, 580 (M.D.N.C. 2019).

In attempting to divine the meaning of "other" reasons (not
enumerated in the policy statement), some courts have
interpreted the BOP's program statement, providing this list of
factors, as an additional basis, or additional bases, for
finding extraordinary and compelling reasons. See United States
v. Adeyemi, No. 06-cr-124, 2020 WL 3642478, at *25 (E.D. Pa.

July 6, 2020). But the BOP's program statement factors are not necessarily "other" extraordinary and compelling reasons. While the factors may be helpful in informing the judgment of the Court, the presence of one or more of these factors is not sufficient in and of itself to justify the granting of compassionate release.

In fact, the BOP's program statement presents the factors as aids to the exercise of discretion, not as independent reasons for granting compassionate release. The very language of the program statement directs that these factors should be considered "[f]or all [compassionate release] requests," including under illness, old age, and family circumstances (the enumerated reasons), not just for "other" extraordinary and compelling reasons. Federal Bureau of Prisons, Program Statement 5050.50 at 12 (Jan. 17, 2019).

Moreover, these factors are "considered to assess whether the [compassionate release] request presents <u>particularly</u> extraordinary and compelling circumstances," not whether the compassionate release request presents "other" extraordinary and compelling reasons. <u>Id.</u> (emphasis added). So, for example, there may be extraordinary and compelling reasons for reducing the sentence of a defendant who is exposed to an increased risk of serious illness by susceptibility to COVID-19, but only if he

has completed a large portion of his sentence and not if he has completed a small portion of his sentence.

Distilling the teachings from both the Commission's policy statement and the BOP's program statement, the Court concludes that there are extraordinary reasons where there are uncommon or unusual circumstances, and there are compelling reasons where continued imprisonment would result in a significant secondary or collateral harm to the defendant. Accordingly, the Court will apply this standard to the remaining reasons proposed by Andrews: (1) the government's charging decision, (2) Andrews's susceptibility to COVID-19, (3) his age, and (4) his rehabilitation. The Court will consider each reason advanced by Andrews in turn.

First, Andrews points to the prosecutor's decision to charge thirteen stacking § 924(c) counts. There is no evidence that Andrews was singled out or treated differently from the other three defendants in this case or other similarly situated defendants. Instead, the facts are that the prosecutors followed applicable prosecutorial policies. At the time that Andrews was prosecuted, in 2005, the exercise of prosecutorial discretion by line prosecutors at the United States Attorney's Office for the Eastern District of Pennsylvania was controlled by Department of Justice policy. The relevant charging policy at the time was detailed in a memorandum from Attorney General John Ashcroft.

31

Memorandum from John Ashcroft, Att'y Gen., Dep't of Justice, to
U.S. Attorneys Regarding Policy on Charging of Criminal
Defendants (Sept. 22, 2003) ("Ashcroft Memo"),
https://www.justice.gov/archive/opa/pr/2003/September/03_ag_516.
htm (last visited Aug. 18, 2020).

The prosecutors in this case acted in accordance with the
Department of Justice charging policies, such that there was no
abuse of prosecutorial discretion. The policy provided that "in
all federal criminal cases, federal prosecutors must charge and
pursue the most serious, readily provable offense or offenses
that are supported by the facts of the case." Id. It further
provided that "[t]he use of statutory enhancements is strongly
encouraged, and federal prosecutors must therefore take
affirmative steps to ensure that the increased penalties
resulting from specific statutory enhancements, such as the
filing of an information pursuant to 21 U.S.C. § 851 or the
filing of a charge under 18 U.S.C. § 924(c), are sought in all
appropriate cases." Id. Indeed, pursuant to the policy "[a]
prosecutor may forego or dismiss a charge of a violation of 18
U.S.C. § 924(c) only with the written or otherwise documented
approval of an Assistant Attorney General [or another
supervisor]." Id. Thus, Andrews points to no facts showing that
prosecutors abused their discretion. And, accordingly, the
prosecutor's charging decision does not favor finding

extraordinary and compelling reasons for granting compassionate release.

Second, Andrews points to his susceptibility to COVID-19. At the outset, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). A risk factor is required, and when a defendant's "hypertension was described as 'mild' and he was prescribed two medications for the condition," that "defendant has not established that his high blood pressure and related medical conditions constitute a serious medical condition" to find extraordinary and compelling reasons. United States v. Nesbitt, No. 09-cr-181, 2020 WL 3412577, at *2-3 (E.D. Pa. June 22, 2020). Andrews does not describe his hypertension beyond saying that it requires medication, and thus the Court finds that it is not a serious enough condition to favor finding extraordinary and compelling reasons.[21]

---

[21] Additionally, the risk to Andrews at USP Canaan, the facility where he is housed, is at this point little more than speculative. See United States v. Buckman, No. 14-cr-540-01, 2020 WL 4201509, at *4 (E.D. Pa. July 22, 2020) ("When prisons can keep the number of positive COVID-19 cases low or even at zero, which is the case at Alderson FPC, the risk of exposure is too speculative to render the circumstances extraordinary and compelling." (citation omitted)). There are zero positive test of 230 that have been conducted at the institution. Federal Bureau of Prisons, COVID-19: Coronavirus, https://www.bop.gov/coronavirus/ (last visited Aug. 18, 2020). And the BOP has implemented protocols to curb the spread of the novel coronavirus in the future and to ensure the safety of all inmates, including the quarantining of inmates who are susceptible to the virus due to

Third, Andrews points to his young age at the time he committed the offenses. He was nineteen years old at the time he committed the offenses. Only three percent of all federal offenders were less than twenty-one years old in 2019. U.S. Sentencing Comm'n, Sourcebook of Federal Sentencing Statistics Table 7 (2019),

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/Table07.pdf

(last visited Aug. 18, 2020). So, his age at the time of the offenses is beyond what is common, i.e., extraordinary. And this young age indicates less culpability and enhances the possibility of rehabilitation.[22] So, his age at the time of the offenses favors granting compassionate release.

Fourth, Andrews points to his rehabilitation in prison. He has an unblemished disciplinary record since 2013 and regularly attends church. He has also taken classes that have prepared him for employment in carpentry, plumbing, and personal fitness. And

---

preexisting health conditions. Federal Bureau of Prisons, BOP Implementing Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 18, 2020).

[22] See Miller v. Alabama, 567 U.S. 460, 472 (2012) ("We reasoned that those findings—of transient rashness, proclivity for risk, and inability to assess consequences—both lessened a child's 'moral culpability' and enhanced the prospect that, as the years go by and neurological development occurs, his 'deficiencies will be reformed.'" (quoting Graham v. Florida, 560 U.S. 48, 68 (2010))); James C. Howell et al., Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know 18 (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf ("Hence adolescents and young adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses.") (last visited Aug. 18, 2020).

he assisted in the development of a crochet program, under which he volunteers time to knitting items to donate to the Salvation Army. Thus, Andrews's rehabilitation can also be viewed as extraordinary, and it favors granting the motion.

And yet, Andrews's young age and rehabilitation are not compelling reasons by themselves to warrant the Court's exercise of its discretion to reduce his sentence.[23] The Court is not aware of any cases where young age at the time of the offense and rehabilitation were found to be both extraordinary and compelling to warrant granting compassionate release without other reasons to support it.[24] Although Andrews's age at the time of the offense and his rehabilitation are uncommon, and thus extraordinary, these reasons are not compelling to warrant a sentence reduction in that there is no significant collateral or secondary harm to Andrews by his continued imprisonment.

---

[23] Whether to grant an authorized sentence reduction is ordinarily committed to the discretion of the district court. See United States v. Mateo, 560 F.3d 152, 154 (3d Cir. 2009) ("We review a court's ultimate decision whether to grant or deny a defendant's motion to reduce sentence under § 3582(c)(2) for abuse of discretion."); United States v. Castano-Vasquez, 266 F.3d 228, 233 (3d Cir. 2001) ("We leave the determination of whether a defendant presents an extraordinary case to the sound discretion of the sentencing court.").

[24] Cf. McCoy v. United States, No. 03-cr-197, 2020 WL 2738225, at *6 (E.D. Va. May 26, 2020) ("Specifically, Petitioner's relative youth at the time of the sentence, the overall length of the sentence, the disparity between his sentence and those sentenced for similar crimes after the FIRST STEP Act, and his rehabilitative efforts form an extraordinary and compelling basis for relief."), appeal docketed, (4th Cir. June 5, 2020); United States v. Maumau, No. 08-cr-00758-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("Based on the above, the court concludes that a combination of factors—Mr. Maumau's young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment—establish an extraordinary and compelling reason to reduce Mr. Maumau's sentence.").

Ultimately, the only harm Andrews articulates, based on young age and rehabilitation, is the harm of continued imprisonment. The BOP's program statement recognizes age at the time of the offense as a factor to consider. And it arguably recognizes rehabilitation in that it lists personal history, discipline in prison, adjustment to prison, and release plans as factors to consider. But as discussed above, the BOP's program statement factors are not necessarily extraordinary and compelling reasons in and of themselves. This case illustrates why this is so.

The circumstances of Andrews's imprisonment suggest that a number of the BOP's program statement factors could support a finding of extraordinary reasons. And yet there is insufficient support for a finding of compelling reasons here. It is true that there may be a harm in the continued imprisonment of a person who is considered rehabilitated and less culpable because of his age at the time of the offense. But, unlike the risk of contracting a serious illness or the risk of harm to a vulnerable dependent, this type of harm is not collateral or secondary to imprisonment. The harm here is that Andrews will continue to be imprisoned pursuant to a lawfully imposed sentence. This is not the harm that compassionate release was intended to remedy.

Therefore, the Court will exercise its discretion to find that Andrews does not present extraordinary and compelling reasons for granting compassionate release.[25]

**V.    CONCLUSION**

For the reasons stated above, the motion for compassionate release will be denied. An appropriate Order follows.

---

[25] While compassionate release is not warranted under the FSA, the facts of this case compel the exercise of the executive power to grant clemency and order the reduction of this sentence. The sentencing Judge would support such an effort.